NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE GERBER PROBIOTIC SALES PRACTICES LITIGATION | Civil Action No.: 12-835 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss the Second Consolidated Amended Complaint ("SAC") (CM/ECF No. 48) pursuant to Federal Rule of Civil Procedure 12(b)(6) (CM/ECF No. 53) by Gerber Products Company (hereafter "Defendant" or "Gerber"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motions, Defendant's motion to dismiss is granted.

## I. BACKGROUND

The instant putative consumer-protection class action arises out of the alleged deceptive, false, and misleading marketing of three Gerber products (collectively the "Products"): Good Start Protect Infant Formula and Good Start Protect Formula for 9 through 24 months ("Good Start"), and DHA & Probiotic Cereal – Single Grain Oatmeal and Rice varieties. (SAC ¶ 2).

Plaintiffs[1] allege that the marketing and labeling of those products are deceptive in two primary ways: despite representations to the contrary, the Products (1) do not provide immune system benefits; and (2) are not are not near equal to breast milk.

Plaintiffs first assert that the Products' marketing and labeling contain false and misleading representations based on the immune system effect of probiotic bacteria, "Bifidus BL." (SAC ¶ 1). The allegation is essentially that despite Defendant's representations regarding the Products' immune system benefits, "numerous studies show that the Products do not and cannot provide the immune-related health benefits Defendant claims." (SAC ¶ 3). Specifically, Plaintiffs allege:

> Gerber's representations are designed to induce the consumer, who is unaware that healthy babies' bodies already maintain the proper balance of intestinal bacteria, to buy the Products. Gerber advertises the Products as the only formulas and cereals that include probiotics that will strengthen and support the immune systems of young children. However, Defendant's marketing message is false and deceptive, as the "probiotic" bacteria in the Products do not perform as advertised, and scientific studies . . . demonstrate that probiotic supplementation in infant formula does not support infant immunity or provide the advertised health benefits including because such supplementation does not (a) decrease the levels of harmful pathogens in babies' intestinal microflora, (b) increase the levels of good bacteria in babies' intestinal micro-flora, or (c) reduce infections

(SAC ¶ 7, *see also* ¶¶ 16, 17).

With regard to the Good Start products, Plaintiffs maintain that the Gerber marketing strategy deliberately includes "IMMUNIPROTECT™," which contains the trademarked Bifidus BL probiotic bacteria, as a "deceptive marketing hook." (SAC ¶ 5). Plaintiffs also maintain that to further reinforce the allegedly deceptive message, Gerber represents that the Products'

---

[1] The following plaintiffs assert claims in the SAC: Maria Alvarez, Ryan Burns, Irene Dourdoulakis, Chad Ginger, Shavonda Hawkins, Joven Jose, Andrew Rudich, Saba Siddiqi, and Janna Thomas. (SAC ¶¶ 23-31) (collectively "Plaintiffs").

2

"advanced" immune system benefits result from the use of Bifidus BL, which is found in breast milk. (SAC ¶ 6).

Second, Plaintiffs allege that despite the fact that "experts unanimously agree that breast milk is best for infants," Gerber also adds ingredients to the Products in order to "claim through its marketing and advertising campaign and package labeling that the Products possess nutritional qualities that are nearly equivalent to those of breast milk." (SAC ¶ 11, *see also* ¶¶ 12, 14). However, scientific evidence allegedly demonstrates that "breast milk provides unique nutritional benefits that Defendant's Products do not provide." (SAC ¶ 14).

Plaintiffs assert that even though the Products' marketing implies that there is a proven scientific basis for the immune system benefits, by representing that the health-related claims are based on "studies" and "research," "the body of scientific evidence on probiotic supplementation in infant formula shows that the probiotic ingredient in the Products *does not* support the infant immune system and *does not* otherwise provide the advertised health benefits." (SAC ¶ 18, *see e.g.* ¶ 37, 39) (emphasis in original). Similarly, "scientific evidence proves that, contrary to Defendant's advertising, formula supplemented with probiotics does not provide breast milk-quality nutrition." (SAC ¶ 19).

In support of their position that the findings of numerous studies contradict Defendant's representations regarding the Products, Plaintiffs point to a number of scientific studies and reports. (SAC ¶¶ 70-86). In addition, Plaintiffs allege that Defendants cite no studies that effectively support certain of its claims and, in fact, the studies cited by Defendants actually demonstrate the falsity of Defendant's advertising and otherwise do not support its immunity strengthening claims. (SAC ¶¶87-91, 93-102). Therefore, Plaintiffs allege that "[n]one of these studies, even if they could be characterized as clinical – which they cannot – supports the

conclusion that Gerber Products in fact strengthen and support a baby and toddler's immune system as labeled and advertised." (SAC ¶ 92).

Accordingly, Plaintiffs allege that the "labeling and advertising claims are false and deceptive because they imply that the Products provide more health benefits than other, less costly predecessor and regular formulas that do not contain probiotics, Bifidus BL™, or "IMMUNIPROTECT™." (SAC ¶ 65). Therefore, Plaintiffs allege that Defendant's representations regarding the Products are likely to mislead consumers, acting reasonably under the circumstances, into believing that the Products are superior to other products because they are the near-equivalent of breast milk and that they provide immune system benefits. (SAC ¶ 66). They also maintain that a reasonable consumer would not have purchased the Products but for the alleged misrepresentations and that Plaintiffs have paid a premium for doing so. (SAC ¶ 104).

Plaintiffs assert that despite rebranding the Products in February 2010 and re-naming them in early 2011, Defendant has manufactured, marketed, and sold the Products since at least September 27, 2009 with false and misleading representations on the packaging, labeling, and online advertising. (SAC ¶¶ 3, 33). Defendants allegedly advertise and promote the Products primarily through "the front-of-pack and back-of-pack" labeling claims. (SAC ¶ 47). In addition, Defendants allegedly use online advertising, its website, and other media, including television commercials. (SAC ¶¶ 48, 63). Gerber allegedly sells the Products at a premium over predecessor and regular formula products without probiotics. (SAC ¶ 21).

Plaintiffs assert the following causes of action in the SAC[2]: (1) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* ("NJCFA") on behalf of Plaintiffs Dourdoulakis and Jose and the putative Class or New Jersey Subclass; (2) violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, on behalf of Plaintiffs Alvarez, Ginger, Hawkins, and Thomas and the putative California Subclass; (3) unlawful business acts and practices in violation of California Business & Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs Alvarez, Ginger, Hawkins and Thomas and the putative California Subclass; (4) violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, on behalf of Plaintiff Rudich and the putative Illinois Subclass; (5) violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiff Siddiqi and the putative New York Subclass; (6) violation of the Washington Deceptive Trade Practices Law, Wash. Rev. Code. §§ 19.86.020, *et seq.* on behalf of Plaintiff Burns and the putative Washington Subclass. In addition, without specifying under which state's law they are brought,

---

[2] Defendant explains:

> This case began when ten separate nationwide class actions were filed in six different District Courts between February and April 2012. On June 7, 2012, the five then-pending New Jersey cases were consolidated and a single consolidated complaint was filed. Dkt. No. 28. On October 16, 2012, the Judicial Panel on Multidistrict Litigation denied consolidation of all pending cases in the District of Washington. *In re Gerber Probiotic Prods. Mktg and Sales Practices Litig.*, --- F. Supp. 2d ---, 2012 WL 495523 (J.P.M.L. Oct. 16, 2012). Following that ruling, the California plaintiffs consolidated their actions, and Gerber moved to transfer the two remaining non-New Jersey actions to this Court pursuant to 28 U.S.C. § 1404(a). Both courts determined that the paramount 1404 factors (avoiding duplication, fostering judicial economy and conserving limited judicial resources) weighed in favor of transfer. *Burns v. Gerber Prods. Co.*, --- F. Supp. 2d ----, 2013 WL 518664 (E.D. Wash. Feb. 12, 2013); *Hawkins v. Gerber Prods. Co.*, --- F. Supp. 2d ---, 2013 WL 627066 (S.D. Cal. Feb. 20, 2013). The Second Amended Consolidated Complaint (Dkt. 48) was filed on April 10, 2013.

(Def.'s Mot. 1 n. 1).

the SAC also contains a number of state law claims on behalf of all Plaintiffs and the putative class: (1) breach of express warranty (Count VII); (2) breach of implied warranty of merchantability (Count VIII); and (3) unjust enrichment (Count IX).

## II. JURISDICTION and LEGAL STANDARD

Jurisdiction is premised upon 28 U.S.C. § 1332(d)(2), as Plaintiffs allege that the matter in controversy, exclusive of interest and cost, exceeds the value of $5 million and is a class action in which at least one class member is a citizen of a different state from Defendant.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 557 (2007)). However, this "'does not

impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008)).

## IV. DISCUSSION

Defendant argues that dismissal is warranted on several grounds: (1) the SAC does not allege a plausible false advertising claim; (2) Plaintiffs have not adequately plead their fraud claims with the requisite level of particularity under Federal Rule of Civil Procedure 9(b); (3) Plaintiffs lack constitutional standing to bring their claims; (4) Plaintiffs lack standing to seek injunctive relief; (5) Plaintiffs fail to satisfy the essential elements of the applicable state consumer fraud and false advertising statutes; (6) Plaintiffs fail to allege a breach of warranty; and (7) Plaintiff's unjust enrichment claim is improper.

Plaintiffs' standing to assert claims under Article III of the Constitution is a threshold jurisdictional question. *See e.g. O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). Accordingly, the Court begins its analysis there. The Court concludes for the reasons set forth below that Plaintiffs only have standing to assert claims premised on the alleged misrepresentations on the Products' labeling. In addition, Plaintiffs do not have standing to seek injunctive relief. The Court has considered the parties' arguments based on the Product labeling and determines, again for the reasons set forth below, that as Plaintiffs' claims are based on Defendant's overall marketing in connection with the Products, the SAC does not sufficiently allege false advertising claim based on the labeling alone. Accordingly, the Court dismisses the SAC without prejudice.

## A. Standing

Defendant argues that Plaintiffs' allegations are insufficient to demonstrate that they have constitutional standing in two regards: (1) they do not sufficiently plead an injury for purposes of Article III; and (2) they do not adequately plead causation. In addition, Gerber submits that Plaintiffs do not have standing to seek injunctive relief because they do not plead a threat of future injury, as required to maintain a claim for injunctive relief.

Gerber asserts that "Plaintiffs have not adequately pled injury in fact and causation, which are necessary elements to establish Article III standing." (Def.'s Mot. 4). The requirements of Article III constitutional standing are as follows:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992); *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005); *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000).

"In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut Funds Litig.*, F. Supp. 2d at 461. However, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Hayes v. Wal-Mart Stores, Inc.*, --- F.3d ---, 2013 WL 3957757, at *9 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). At the pleading

stage, "[a]lthough general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Lujan*, 504 U.S. at 561; *Whitmore v. Arkansas*, 485 U.S. 149, 155 (1990)).

1. Injury In Fact

With regard to the injury in fact requirement, Defendant asserts that "not one plaintiff alleges (even in conclusory terms) that he did not receive the health benefits from the products as advertised. This is a fatal flaw." (Def.'s Mot. 4; *see also* Def.'s Mot. 24-25).[3] In arguing that Plaintiffs did not suffer an injury-in-fact, Defendant relies on a number of consumer protection cases where the products at issue contained potentially dangerous substances, but the plaintiffs suffered no ill effects. (Def.'s Mot. 25) (citing *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507 (D. Mass. 2011) (plaintiffs suffered no injury-in-fact where they alleged that fruit juice contained trace amounts of lead); (Def.'s Reply 14-15) (citing *Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *4-5 (D.N.J. Jul. 29, 2008) (plaintiff did not have standing where she alleged she was denied the benefit of the bargain when she purchased lipstick containing lead). However, as discussed above, that is not the substance of Plaintiffs' claim. Throughout the SAC and their Opposition, Plaintiffs claim that they paid a premium for the Products at issue based on false, deceptive, and misleading representations.

---

[3] The Court agrees with Plaintiffs that this argument goes to the merits of the claim. "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threated injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal citations and quotations omitted). To the extent that a state consumer statute or other cause of action requires a showing of same, it would be more appropriate to address Defendant's arguments within the context of that discussion. The Court notes, however, that it does not reach Defendant's argument that Plaintiff fails to plead certain essential elements of their consumer fraud claims.

Plaintiffs correctly argue that "[m]onetary harm is a classic form of injury in fact. Indeed it is often assumed without discussion." (Pl.'s Opp'n. 22) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d at 293) (internal citation omitted). Accordingly, at this stage of the litigation, Plaintiffs sufficiently allege an actual injury which is concrete and particularized. *See Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 625 (N.D. Cal. 2011).[4]

2. Causation

As to causation, Defendant submits that "plaintiffs fail to specify which allegedly false or misleading advertisement was reviewed prior to purchasing the product(s) and how that statement influenced the purchasing decision." (Def.'s Mot. 4). However, Defendant does not point to a requirement that such specificity is required to demonstrate constitutional standing generally. Rather, Gerber points to a number of cases which analyzed the standing requirements for certain specific state consumer protection statutes, which the parties do not dispute are analyzed under the lens of Rule 9(b)'s heightened pleading requirement.[5] (Def.'s Mot. 25) (citing *In Re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (considering claims asserted under New Jersey's Consumer Fraud Act)[6]; *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012) (discussing the

---

[4] Even under the more exacting standard of Rule 9(b), courts in this District have held that an exact dollar amount is not required to plead an ascertainable loss under the New Jersey Consumer Fraud Act. *Nelson v. XACTA 3000 Inc.*, No. 08-5426, 2010 WL 1931251, at *7 n.3 (D.N.J. May 12, 2010); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec. 17, 2008)

[5] The parties do not dispute that most of Plaintiffs' false advertising claims asserted under state statutes, including New Jersey, Illinois, California, and Washington, must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Def.'s Mot. 3; Def.'s Reply 9).

[6] For the sake of completeness, it is worth noting that in *In re Toshiba* the court concluded that the plaintiff's allegations regarding ascertainable loss and causation under the NJFCA satisfied neither Rule 8(a) or 9(b). 2009 WL 2940081, at *13.

reliance requirement under California's Unfair Competition Law, False Advertising Law and Consumer Legal Remedies Act); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011) (considering whether allegations satisfy the heightened pleading requirements of Rule 9(b)); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010)(discussing statutory standing requirements of California's Unfair Competition Law and Consumer Legal Remedies Act)). In their Opposition, Plaintiffs argue that "[t]here is a causal connection between the Plaintiffs' injury and Defendant's conduct. Plaintiffs thought they were purchasing, and paying for, products with the immune benefits Gerber stated they had, but Plaintiffs did not receive what they paid for because [] Gerber misrepresented the qualities of its products." (Pls.' Opp'n. 23).

A number of Plaintiffs allege that they relied on alleged misrepresentations contained only on the Products' labeling. Plaintiffs Rudich, Siddiqi, and Thomas all identify the Products they purchased and allege that they "viewed and specifically relied upon Defendant's claims by reading the representations made on the product label concerning the probiotic benefit of the Products, purchased Gerber Products in reliance on these claims, and sustained injury in fact and lost money as a result of the wrongful conduct described herein." (SAC ¶¶ 29-31). On the other hand, a number of Plaintiffs state in a conclusory fashion that they relied on Defendant's "advertisements and labeling." Plaintiffs Burns, Dourdoulakis, Ginger, Hawkins, and Jose all allege that they purchased certain of the Products based on "Gerber's misleading claims in its advertisements and labeling that the Products contained probiotic bacteria strains that provide immunity-related health benefits and are near-equivalents to breastmilk." (SAC ¶¶ 24-28). In addition, one Plaintiff merely alleges only that she would not have purchased the Products but for Gerber's "misrepresentations." (SAC ¶ 23). Plaintiff Alvarez alleges that she "would not

have purchased and paid a premium for the Gerber products but for Gerber's misrepresentations, and she suffered injury in fact and lost money as a result of Gerber's deceptive, unfair, and fraudulent practices described herein." (SAC ¶ 23).

Separate and apart from the product labeling, the SAC references a number of different types of representative "advertisements," including television commercials, press releases, and excerpts from Gerber's website. Indeed, as discussed in greater detail below, Plaintiffs premise their claims on Gerber's overall marketing campaign in connection with the Products. However, no Plaintiff provides facts sufficient to allege causation in connection with those aspects of Defendant's marketing campaign. For example, other than the Products' label, no Plaintiff alleges even the general type or medium of "advertising" to which they were allegedly exposed. Nor do Plaintiffs otherwise allege facts as to how misrepresentations in the "advertising" caused their injuries. Therefore, the SAC does not contain sufficient facts to allege that the injuries which resulted to Plaintiffs were fairly traceable to any of Gerber's representations other than those on the Products' labeling. *See Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."))

3. Injunctive Relief

Next, Defendant argues that Plaintiffs lack standing to seek injunctive relief because they have not alleged a threat of a future injury, which is required to obtain prospective relief. (Def.'s Mot. 4, 26-27). On the other hand, Plaintiffs argue that it is premature to decide whether they have standing to seek injunctive relief. (Pls.' Opp'n. 23). Plaintiffs further argue that "[i]n the instant case, Plaintiffs' ability to seek injunctive relief on behalf of other class members to

prevent Gerber from continuing to falsely tout the qualities of its Products arises only because of the class-action context of this case. As a result, Plaintiffs' standing to seek injunctive relief should be determined after class certification, in relation to whether the class as a whole would have standing to seek injunctive relief, not just the named Plaintiffs." (Pls.' Opp'n. 25). Plaintiffs also point to a number of cases from the district courts of California to argue that standing should not be so narrowly construed. (Pls.' Opp'n. 23-24).

"An injury-in-fact 'must be concrete in both a qualitative and temporal sense.'" *Reilly v. Ceridian Corp.*, 664 F.3d at 42. As explained by the Third Circuit, where a plaintiff seeks prospective relief, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects." *Id.* (internal citations and quotations marks omitted). The Court agrees with Defendant that in this instance, no Plaintiff alleges that he or she is likely to "suffer future injury from the defendant's conduct [and in] the class action context, that requirement must be satisfied by at least one named plaintiff." *Id.*; *see also Dicuio v. Brother Intern. Corp.*, Civ. No. 2012 WL 3278716, at * 15 (D.N.J. Aug. 9, 2012) ("[I]t is not enough that other, non-named members of the class may intend to purchase [the product] in the future."). Therefore, the Court dismisses without prejudice Plaintiffs' claim for injunctive relief. *Dicuio*, 2012 WL 3278716, at * 14-16; *Robinson v. Hornell Brewing Co.*, Civ. No. 11-2183, 2012 WL 1232188, at *3-7 (D.N.J. Apr. 11, 2012).

## A. False or Misleading Advertising

In essence, Gerber maintains that the Products' marketing is not deceptive or misleading as a matter of law. Defendant submits that the law of New Jersey, California, New York, and Washington requires that allegedly false advertisements must have the capacity to mislead the average consumer. (Def.'s Mot. 6-7). Similarly, Defendant contends that the law of Illinois requires a plaintiff to allege that he was deceived and that deception caused him damages." (Def.'s Mot. 7). Accordingly, Gerber argues that Plaintiffs' false advertising claim is deficient due to the following: (1) Gerber's Good Start Formula Products are not marketed as an equivalent of breast milk; (2) Plaintiffs' lack of substantiation allegations are not viable; and (3) the cited studies are either irrelevant or confirm the advertised healthy immune system benefits.

Defendants argue that private individuals may not bring an action demanding substantiation for advertising claims. (Def.'s Mot. 9). In Opposition to this instant motion, Plaintiff asserts that: "Gerber casts Plaintiffs' case as something it is not – a 'lack of substantiation case' – and then contends the re-defined case must be dismissed." (Pls.' Opp'n. 1). Rather, Plaintiffs clarify that their claim is based on Defendant's alleged false and deceptive marketing regarding "probiotic" bacteria which is alleged to not perform as advertised. (Pl.'s Opp'n. 1) (citing SAC ¶¶ 64-65, 67-69, 78, 93). Plaintiffs distinguish a lack of substantiation argument – where a plaintiff argues that there is no competent evidence to support a claim made in defendant's advertising or labeling – from their claim which they maintain is premised upon allegations that competent scientific evidence demonstrates that claims made by a defendant are objectively false. (Pl.'s Opp'n. 9). Accordingly, they argue that the scientific evidence to which they point supports their allegations of false advertising. (Pl.'s Opp'n. 8-9). They concede, however, that their claims are not viable to the extent that it is premised upon a lack of

substantiation theory. Therefore, to the extent Plaintiffs' claims are based on a lack of substantiation theory, they are dismissed with prejudice. *Franulovic v. Coca-Cola Co.*, 390 F. App'x. 125, 128 (3d Cir. 2010); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, Nos. 10-3684, 10-5628, 2012 WL 2916827, at *6-7 (D.N.J. Jul. 17, 2012).

Gerber additionally argues that Plaintiffs may not rely on a lack of substantiation theory to "so easily sidestep their obligation to allege *facts* demonstrating falsity in order to survive a motion to dismiss." (Def.'s Mot. 2). However, as discussed above, Plaintiffs do cite a number of studies and reports and allege in detail that those relied upon by Defendant in its marketing are false or misleading. (Pl's Opp'n. 6-8). Thus, Plaintiffs do not merely assert that no credible science supports Defendant's claims; rather, they allege that the representations regarding the Products are affirmatively false. *Hughes v. Ester C Co.*, --- F. Supp. 2d ---, 2013 WL 1080533, at *13 (E.D.N.Y. Mar. 15, 2013).

Notwithstanding, Gerber argues that "Plaintiffs' reliance on these studies is misplaced: the studies either confirm the immunity benefits of Gerber's probiotic formula and cereal products . . . or are entirely irrelevant. Merely citing a gaggle of studies might create the appearance of factual issues, but in this case the tactic does not withstand even minimal scrutiny – it was rejected in a very recent decision and should likewise be rejected again here." (Def.'s Mot. 3) (citing *Route*, 2013 WL 658251, at *5). The Court concludes that *Route* is distinguishable from this case. In *Route*, the court characterized plaintiff's allegations of falsity as based on allegations that: "(1) one paper discusses both the evidence supporting the advertisement's claim and the evidence that doesn't support it, (2) unidentified experts and studies have shown that the advertisement's claims are false, and (3) [p]laintiff subjectively believes that the advertisement's claims are false." *Route*, 2013 WL 658251 at * 5. In this case,

however, Plaintiffs point to a number of studies, which they contend have "demonstrated that the bacteria in the Products do not provide any clinically relevant immunity benefits. This means that it does not provide these benefits, rendering the advertising false or misleading." (Pl.'s Opp'n. 12) (internal citations omitted). The parties dispute the reliability and findings of certain studies, as well as the applicability of same to infants and children who consume the Products at issue. In this regard, however, the Court agrees with Plaintiffs that it is not appropriate to consider the content of the studies and resolve the factual issues at this stage of the litigation. Indeed, in arguing that other courts have rejected similar claims, Defendant relies on two cases that involved motions for summary judgment. (Def.'s Mot. 17-18) (citing *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, Nos. 10-3684 and 10-5628, 2012 WL 2916827, at * 7 (D.N.J. Jul. 17, 2012)[7]; *Stanley v. Bayer Healthcare, LLC*, No. 11-862, 2012 WL 1132920, at * 5 (S.D. Cal. April 3, 2012). Therefore, the Court declines to hold that Gerber's representations regarding purported immune system benefits are neither false, deceptive, nor misleading.

a. Equivalence of Breast Milk

The Court now turns to whether a reasonable consumer could find Gerber's representations regarding the products misleading. Gerber maintains that it "endorses breast milk in the clearest of terms on its products and its website as the ideal source of nutrition for babies." (Def.'s Mot. 7, *see also* 8). Further, Defendant asserts: "Remarkably, Gerber's statements – which eviscerate plaintiffs' breast milk equivalence claim – are carefully edited out

---

[7] The Court notes for the sake of completeness that *Scheuerman* disposed of both a motion to dismiss and a motion for summary judgment. 2012 WL 2916827, at * 7. However, in concluding that the plaintiffs' claims premised upon false or misleading statements were insufficient, the court considered evidence adduced throughout discovery as well as opinions of experts. *Id.* at 7-9.

of the SAC." (Def.'s Mot. 8).[8] Specifically, Defendant points to the use of ellipses in place of the word "ideal" throughout the SAC and writes: "Is this really how lawyers should state a claim? Alleging a fraud only by deleting the truth? The Court should not approve such tactics." (Def.'s Mot. 9) (citing *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see also Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251. Defendant argues that it clearly and unmistakably endorses breast milk as the ideal nutrition for babies.[9] However, the parties do not dispute that the appropriate inquiry is whether a reasonable person would be misled by the overall advertising. (Pls.' Opp'n. 3, n.2.; Def.'s Reply 3).

In their Opposition, Plaintiffs write: "With overblown and false indignation, Gerber accuses Plaintiffs of 'the consummate blue smoke and mirrors' by 'repeatedly replac[ing] Gerber's statements promoting breast milk as the 'ideal' source of nutrition for babies with 'dot-dot-dot. Gerber should focus on being more accurate and less accusatory." (Pls.' Opp'n. 4)

---

[8] The parties do not dispute that the Court may properly consider the contents of the advertisings upon which Plaintiffs base their claims in deciding the instant motion to dismiss. (Def.'s Mot. 8) (citing *Am. Cyanamid Co. v. S.C. Johnson & Son, Inc.*, 729 F. Supp. 1018, 1021-22 (D.N.J. 1989)).

[9] In its Reply, Defendant further argues that Plaintiffs fail to distinguish *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251. (Def.'s Reply 5). That case also involved allegedly misleading representations made in connection with the marketing of baby formula. Defendants point to the following language from a footnote in that case: "[I]t appears that Plaintiff would have this Court find that anytime baby formula is advertised as providing health benefits *analogous* to those found in breast milk, the advertisement is misleading. This surely cannot be." (Def.'s Reply 5) (quoting *Route*, 2013 WL 658251, at *5 n.6) (emphasis added by Defendant). Notably, the decisions of other district courts are not binding on this court. In any event, here Plaintiffs allege that in light of the fact that "experts unanimously agree that breast milk is best for infants," Gerber adds ingredients to the Products in order to "claim through its marketing and advertising campaign and package labeling that the Products possess nutritional qualities that are nearly equivalent to those of breast milk," despite the fact that scientific evidence demonstrates that "breast milk provides unique nutritional benefits that Defendant's Products do not provide." (SAC ¶ 11, 14).

(internal citations omitted, alteration in original). Plaintiffs quote allegations in the SAC at length and clarify that the substance of their claim is that: despite touting the benefits of probiotic cultures in Good Start which are "like those naturally promoted by breast milk to support an infant's healthy immune system," those claims are allegedly contrary to scientific evidence which demonstrates that "formula supplemented with probiotics does not provide breast milk-quality nutrition." (Pl.'s Opp'n. 2, 4-5). Therefore, Plaintiffs explain that they "never allege that Gerber advertises that Good Start is *better* than breast milk. Instead, Plaintiffs allege that Gerber falsely or deceptively *equates* Good Start to breast milk." (Pl.'s Opp'n. 3). Stated another way, Plaintiffs allege that "Gerber clearly holds out breastfeeding as the gold standard, and then (falsely) equates Good Start to that gold standard." (Pl.'s Opp'n. 4). Accordingly, Plaintiffs argue "that this is not the 'rare' case where an advertisement can be declared not deceptive as a matter of law." (Pl.'s Opp'n. 5) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

The Court notes that whether a practice is deceptive or misleading is generally a question of fact. *See e.g. Williams*, 552 F.3d at 938-39 ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides'" and usually cannot be resolved through a motion to dismiss); *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."). Here, Plaintiffs allege that in light of the fact that "experts unanimously agree that breast milk is best for infants," Gerber adds ingredients to the Products in order to "claim through its marketing and advertising campaign and package labeling that the Products possess nutritional qualities that are nearly

equivalent to those of breast milk," despite the fact that scientific evidence demonstrates that "breast milk provides unique nutritional benefits that Defendant's Products do not provide." (SAC ¶ 11, 14).

Notwithstanding, as discussed above, Plaintiffs only establish standing to assert claims based on the alleged misrepresentations on the Products' labeling. However, the allegedly deceptive or misleading practice on which Plaintiffs base their claims is the overall marketing of the Products, which includes both the labeling as well as many other aspects of Gerber's marketing/advertising. Stated another way, Plaintiffs do not assert independent claims based on the Product's labeling alone.

In addition, both parties rely on representations of Defendant's overall marketing message in both the advertising as well as the labeling of the Products in support of their arguments. For example, throughout Plaintiffs' brief, they point to concrete examples of misleading statements from press releases and the website in the SAC. Plaintiffs also refer to Defendant's "misrepresentations" without specifying the source. (*See e.g.* SAC ¶ 66). Also, they allege that a reasonable consumer would not have purchased the Products but for the alleged misrepresentations and that Plaintiffs have paid a premium for doing so. (SAC ¶ 104). Further, in responding to Defendant's argument that Plaintiffs have not alleged that a reasonable consumer is "likely to be deceived" under California law, Plaintiffs point to the following which exemplifies the issue:

> Gerber expressly advertises that Good Start contains probiotics, which makes Good Start a near-equivalent to breast milk. For example, in one press release, Defendant stated "Nestle believes that GOOD START formula provides mothers, who cannot or who choose not to breastfeed, a healthy breast milk alternative." SAC ¶ 44; *see also* ¶ 12 (Good Start contains probiotics "like those promoted by breast milk"), ¶ 40 (same), ¶ 41 ("This breakthrough product is the first and only older-baby formula in the U.S. with the probiotic, BIFIDUS BL – beneficial

cultures like those found in breast milk that help support babies' immune system."), ¶ 57 and ¶ 59 (product packaging and labeling), ¶¶ 60-62 (Gerber website, including a FAQ "How does GOOD START Protect compare with breast milk?"), ¶ 63 (tv ad).

(Pls.' Opp'n. 29). To be sure, the Court does not suggest that Plaintiffs may never refer to Defendant's collective misrepresentations in the SAC. However, as determined above, Plaintiffs only have standing to assert claims based on the labeling of the Products. In light of the fact that Plaintiffs' claims are premised on Gerber's overall marketing campaign, the Court cannot determine whether Plaintiffs state a plausible right to relief based on the representations contained on the Products' labels alone. Accordingly, the Court dismisses the SAC without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is GRANTED. The SAC only establishes standing to sue for injuries caused by the alleged misrepresentations on the Products' labels. However, as Plaintiffs premise their claims on Defendant's overall marketing message and assert no independent claims based on the labeling of the Products alone, they do not clearly allege a plausible right to relief. In addition, Plaintiffs do not allege a plausible future injury which could suffice as a basis for injunctive relief in the Third Circuit. Accordingly, the Court dismisses the SAC without prejudice. However, the Court dismisses with prejudice Plaintiffs' claims to the extent that they are premised upon a lack of substantiation theory.

If Plaintiffs choose to amend, the Court advises the parties of the following in light of the Court's inherent authority to manage its cases and docket. Plaintiffs assert claims for breach of express warranty, breach of implied warranty, and unjust enrichment without specifying which state or states' laws they seek to invoke. As a general matter, absent a conflict, a court sitting in

diversity applies the law of the forum state. *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941); *see Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006). Choice of law analysis must also be applied in the class action context. *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985). Accordingly, the parties should make clear which law they contend applies, to the extent possible given the posture of the litigation, for purposes of determining plausibility and otherwise.

In addition, Plaintiffs assert causes of action under the consumer fraud and false advertising statutes of a number of States. To the extent that any of the parties make general arguments regarding those claims, they should exercise caution to ensure that those arguments are indeed applicable to all claims and make clear where they are not. For example, Defendant argues that dismissal is warranted because "not one of the nine named plaintiffs identifies the advertisements on which he relied or how that advertisement influenced the purchasing decision." (Def.'s Mot. 3-4; *see also* 19-20). However, the Court notes that while almost all of the relevant statutes require a plaintiff to satisfy the heightened pleading standards of 9(b), Defendants do not address which of the state consumer protection statutes at issue require individual reliance.[10] Defendant also argues that Plaintiffs fail to satisfy Rule 9(b) because they do not allege the "premium" they allegedly paid. However, Defendants do not explain why this is fatal to state claims in light of the essential elements of each. For example, Defendants

---

[10] Defendant cites this Court's Opinion in another case for the proposition that "'general exposure to, and reliance upon, some advertisements, is insufficient to survive [the] heightened scrutiny' of Rule 9(b)." (Def.'s Br. 20) (quoting *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (Linares, J.) (no alteration supplied). The Court notes, however, that the excerpt to which Defendant points related to the Court's discussion of Rule 9(b) with regard to negligent and intentional misrepresentation, which require a plaintiff to allege and prove reliance upon a defendant's misrepresentations. 2009 WL 1617930, at *3.

address the "ascertainable loss" requirement in the New Jersey Consumer Fraud Act[11] at length but make no similar arguments regarding the laws of other states. Therefore, as the essential elements of the relevant consumer fraud and false advertising statutes vary, the parties should organize their briefs in a manner which makes clear to which elements Rule 9(b) applies and which of their arguments are generally applicable.

An appropriate Order accompanies this Opinion.

DATE: August 22, 2013

Jose L. Linares
United States District Judge

---

[11] *See e.g. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 929 A.3d 1076, 1086 (N.J. 2007). (In order to state a claim under the NJCFA, a plaintiff must allege the following: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.)