<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE GERBER PROBIOTIC SALES PRACTICES LITIGATION | Civil Action No.: 12-835 (JLL) |
| | **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss [CM/ECF No. 66] the Third Consolidated Amended Complaint ("TAC") [CM/ECF No. 63] pursuant to Federal Rule of Civil Procedure 12(b)(6) by Gerber Products Company (hereafter "Defendant" or "Gerber"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motion, Defendant's motion to dismiss is granted in part and denied in part.

## I. <u>BACKGROUND</u>

The instant putative consumer-protection class action arises out of the alleged deceptive, false, and misleading marketing of three Gerber products (collectively the "Products"): Good Start Protect Infant Formula and Good Start 2 Protect Formula for 9 through 24 months ("Good Start"), and DHA & Probiotic Cereal – Single Grain Oatmeal and Rice varieties.  (TAC ¶ 2). Plaintiffs[1] allege that the marketing and labeling of those products are deceptive in two primary

---

[1] The following plaintiffs assert claims in the TAC: Maria Alvarez, Ryan Burns, Irene Dourdoulakis, Shavonda Hawkins, Joven Jose, Saba Siddiqi, and Janna Thomas.  (TAC ¶¶ 23- 30) (collectively "Plaintiffs").  Plaintiff Andrew Rudich voluntarily dismissed his claims on March 13, 2013.  [CM/ECF No. 75.]

ways: despite representations to the contrary, the Products (1) do not provide immune system benefits; and (2) are not are not near equal to breast milk.

First, Plaintiffs assert that the Products' marketing and labeling contain false and misleading misrepresentations based on the immune system effect of a probiotic bacteria, "Bifidus BL." (TAC ¶ 4). Essentially, Plaintiffs allege that despite Defendant's representations regarding the Products' immune system benefits, "numerous studies show that the Products do not and cannot provide the immune-related health benefits Defendant claims." (TAC ¶ 4). Specifically, Plaintiffs allege:

> Gerber's representations are designed to induce the consumer, who is unaware that healthy babies' bodies already maintain the proper balance of intestinal bacteria, to buy the Products. Gerber advertises the Products as the only formulas and cereals that include probiotics that will strengthen and support the immune systems of young children. However, Defendant's marketing message is false and deceptive, as the "probiotic" bacteria in the Products do not perform as advertised, and scientific studies . . . demonstrate that probiotic supplementation in infant formula does not support infant immunity or provide the advertised health benefits including because such supplementation does not (a) decrease the levels of harmful pathogens in babies' intestinal microflora, (b) increase the levels of good bacteria in babies' intestinal micro-flora, or (c) reduce infections.

(TAC ¶ 7, *see also* ¶¶ 16, 17).

With regard to the Good Start products, Plaintiffs maintain that the Gerber marketing strategy deliberately includes "IMMUNIPROTECT™," which contains the trademarked Bifidus BL probiotic bacteria, as a "deceptive marketing hook." (TAC ¶ 5). With regard to its cereal products, which also contain Bifidus BL, Plaintiffs allege that Gerber represents they will "help support a healthy immune system." (TAC ¶ 5). To further reinforce the allegedly deceptive message, Plaintiffs allege that Gerber represents that the Products' "advanced" immune system benefits result from the use of Bifidus BL, which is found in breast milk. (TAC ¶ 6).

2

Second, Plaintiffs allege that despite the fact that "experts unanimously agree that breast milk is best for infants," Gerber also adds ingredients to the Products in order to "claim  on its packaging and labeling, and throughout its marketing and advertising campaign that the Products possess nutritional qualities that are nearly equivalent to those of breast milk." (TAC ¶ 11, *see also* ¶¶ 12, 14).  However, scientific evidence allegedly demonstrates that "breast milk provides unique nutritional benefits that Defendant's Products do not provide." (TAC ¶ 14).

Plaintiffs allege that even though the Products' marketing implies that there is a proven scientific basis for the immune system benefits, by representing that the health-related claims are based on "studies" and "research," "the body of scientific evidence on probiotic supplementation in infant formula shows that the probiotic ingredient in the Products *does not* support the infant immune system and *does not* otherwise provide the advertised health benefits." (TAC ¶ 18, *see e.g.* ¶ 36, 38) (emphasis in original).  Similarly, "scientific evidence proves that, contrary to Defendant's advertising, formula supplemented with probiotics does not provide breast milk-quality nutrition." (TAC ¶ 19).

In support of the allegation that the findings of numerous studies contradict Defendant's representations regarding the Products, Plaintiffs point to a number of scientific studies and reports. (TAC ¶¶ 70-86).  In addition, Plaintiffs allege that Defendants cite no studies that effectively support certain of its claims.  In fact, Plaintiffs claim that the studies cited by Defendants actually demonstrate the falsity of Defendant's advertising and otherwise do not support its immunity strengthening claims. (TAC ¶¶ 87-102).  Therefore, Plaintiffs allege that "[n]one of these studies, even if they could be characterized as clinical – which they cannot – supports the conclusion that Gerber Products in fact strengthen and support a baby and toddler's immune system as labeled and advertised." (TAC ¶ 92).

3

Accordingly, Plaintiffs allege that the "labeling and advertising claims are false and deceptive because they imply that the Products provide more health benefits that other, less costly predecessor and regular formulas that do not contain probiotics, Bifidus BL™, or "IMMUNIPROTECT™." (TAC ¶ 65). Therefore, Plaintiffs allege that Defendant's representations regarding the Products are likely to mislead consumers acting reasonably under the circumstances into believing that the Products are superior to other products because they are the near-equivalent of breast milk and that they provide immune system benefits. (TAC ¶ 66; *see also* ¶ 103). Further, they allege that a reasonable consumer would not have purchased the Products but for the alleged misrepresentations and that Plaintiffs have paid a premium for doing so. (TAC ¶ 104). Gerber allegedly sells the Products at a premium over predecessor and regular formula products without probiotics. (TAC ¶ 21).

Plaintiffs assert that despite rebranding the Products in February 2010 and re-naming them in early 2011, Defendant has manufactured, marketed, and sold the Products since at least September 27, 2009 with false and misleading representations on the packaging, labeling, and online advertising. (TAC ¶¶ 3, 32). Defendants allegedly advertise and promote the Products primarily through "the front-of-pack and back-of-pack" labeling claims. (TAC ¶ 46, 56-58). In addition, Defendants allegedly use online advertising, including at its website, and other media, including television commercials. (TAC ¶¶ 45, 47, 59-64).

Plaintiffs assert the following causes of action in the TAC: ( 1) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq*. ("NJCFA") on behalf of Plaintiffs Dourdoulakis and Jose and the putative Class or New Jersey Subclass; (2) violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*., on behalf of Plaintiffs Alvarez, Hawkins, and Thomas and the putative California Subclass; (3) unlawful business acts

4

and practices in violation of California Business & Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs Alvarez, Hawkins and Thomas and the putative California Subclass; (4) violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiff Siddiqi and the putative New York Subclass; (5) violation of the Washington Deceptive Trade Practices Law, Wash. Rev. Code. §§ 19.86.020, *et seq.* on behalf of Plaintiff Burns and the putative Washington Subclass.[2]  In addition, the TAC also contains a number of New Jersey state law claims on behalf of all Plaintiffs and the putative class, or in the alternative on behalf of a class of similarly situated persons from each Plaintiff's respective state of residence pursuant to the applicable provision of law from his or her state: (1) breach of express warranty (Count VII); (2) breach of implied warranty of merchantability (Count VIII); and (3) unjust enrichment (Count IX).

## II. <u>JURISDICTION and LEGAL STANDARD</u>

Jurisdiction is premised upon 28 U.S.C. § 1332(d)(2), as Plaintiffs allege that the matter in controversy, exclusive of interest and cost, exceeds the value of $5 million and is a class action in which at least one class member is a citizen of a different state from Defendant.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim

---

[2] Plaintiff Andrew Rudich voluntarily dismissed his claims on March 13, 2013.  Plaintiff Rudich had alleged violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* on behalf of himself and the putative Illinois subclass.  [CM/ECF No. 75.]

is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at at 557 (2007)). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips,* 515 F.3d at 234).

## III. DISCUSSION

Defendant argues that dismissal is warranted on several grounds: (1) Plaintiffs lack constitutional standing to bring their claims; (2) Plaintiffs lack standing to seek injunctive relief; (3) the California, Illinois, New Jersey, and Washington Plaintiffs have failed to plead their fraud claims with the requisite level of particularity under Federal Rule of Civil Procedure 9(b); (4) Plaintiffs' breast milk equivalence claims would not deceive a reasonable consumer; (5) Plaintiffs fail to satisfy the essential elements of the applicable state consumer fraud and false advertising statutes; (6) Plaintiffs fail to allege a breach of warranty; (7) Plaintiffs' unjust enrichment claim is improper; and (8) Plaintiffs' lack of substantiation allegations are not viable.

Plaintiffs' standing under Article III of the Constitution to assert their claims is a threshold jurisdictional question. Accordingly, the Court begins its analysis there.

## A. Standing

This Court ruled on a prior motion to dismiss Plaintiffs' claims that Plaintiffs lacked constitutional standing to assert their claims because they were based on "the overall marketing of the Products," and "no Plaintiff provide[d] facts sufficient to allege causation in connection with" Defendant's overall marketing campaign. [CM/ECF No. 61, at 19, 12.] The Court also ruled that Plaintiffs lacked standing to assert claims for injunctive relief. [*Id.* at 13.]

In the instant motion, Gerber again argues that Plaintiffs' allegations are insufficient to demonstrate that they have constitutional standing because they do not adequately plead causation with respect to Defendant's overall marketing campaign. In addition, Gerber submits that Plaintiffs do not have standing to seek injunctive relief because they do not plead a threat of future injury, as required to maintain such a claim.

Gerber asserts that "Plaintiffs [have] failed to plead causation in connection with Gerber's overall marketing campaign." (Def. Br. 8). The requirements of Article III constitutional standing are as follows:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005); *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000).

"In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005). At the pleading stage, "[a]lthough general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Lujan*, 504 U.S. at 561); *Whitmore v. Arkansas*, 485 U.S. 149, 155 (1990).

As to causation, Defendant submits that Plaintiffs continue to base their claims on Gerber's overall marketing campaign but "fail to connect a specific misrepresentation and Gerber advertising medium to their alleged injur[ies]." (Def. Br. 9.) Defendant maintains that Plaintiffs have barely amended the Second Amended Complaint in response to the Court's prior opinion and order, such that the TAC includes only "passing references that certain Plaintiffs viewed certain of Gerber's advertising mediums prior to purchasing." (Def. Br. 8-9.) Specifically, Defendant submits that "replacing, for instance, 'advertisements' with an equally vague string cite to 'labeling, on Gerber's website, and in print advertisements' does not sufficiently tie a particular representation to Plaintiffs' alleged injuries." (Def. Br. 9.)

Plaintiffs allege that they have standing to challenge the representations in Gerber's overall marketing campaign because "[based upon the probiotic immunity claim made on Gerber's packaging and labeling, which is reinforced by the same message Plaintiffs were exposed to throughout Gerber's advertising campaign . . ., [Plaintiffs have alleged] plausible

claims that their injuries are fairly traceable to Gerber's false and deceptive advertising." (Pl. Br. 5.)

Although the Court agrees that Plaintiffs have added very little new information in the TAC, upon further consideration, the Court finds the allegations in the TAC sufficient to confer Article III standing to state claims based on Gerber's overall marketing campaign. Each Plaintiff saw the product labels; Plaintiffs Burns, Dourdoulakis, Hawkins, and Thomas saw print, television, or in-store advertisements; and Plaintiffs Dourdoulakis and Jose also allege that they saw Gerber's website. The Court accepts as true Plaintiffs' contention that the various advertisements cited in the Complaint and referenced by each Plaintiff carry the same central messages that Plaintiffs claim to be false and misleading. Further, the Court agrees with Plaintiffs that having to find a named Plaintiff who viewed each advertising medium utilized in a campaign, when the challenged representations are substantially the same in each medium, would be unproductive and unnecessary to confer Article III standing.

Causation for standing purposes is met here because Plaintiffs demonstrate that Gerber's message was consistent across its campaign, and Plaintiffs allege that they were exposed to advertisements and the product labels, and that they relied upon the category of misrepresentations at issue in purchasing the product(s). (*See* TAC ¶¶ 23-30.) "At the pleading stage . . . a plaintiff is 'not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'" *Morey v. NextFoods, Inc.*, 2010 U.S. Dist. LEXIS 67990, at *4-5 (S.D. Cal. June 7, 2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).   Therefore, the TAC contains sufficient facts to allege that Plaintiffs' injuries were fairly traceable to Gerber's overall marketing campaign. *See Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007) (quoting *Allen v. Wright*, 468 U.S.

737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.")  "Plaintiff[s'] allegations that [they] purchased [Defendant's] products in reliance on [Defendant's] advertising is sufficient . . ." to confer standing.  *Morey*, 2010 U.S. Dist. LEXIS 67990, at *4-5.[3]

Next, Defendant argues that Plaintiffs lack standing to seek injunctive relief because they have not alleged a threat of a future injury, which is required to obtain prospective relief.  (Def. Br. 11-12).  This Court ruled in its prior opinion that Plaintiffs could not seek injunctive relief because they had not demonstrated a threat of future injury.  Rather than amending their complaint, Plaintiffs now explain that they "respectfully disagree with the Court's previous holding because it is contrary to binding Supreme Court precedent." (Pl. Br. 13.)  The Supreme Court precedent to which Plaintiffs refer is *Ortiz v. Fireboard Corp*, 527 U.S. 815, 831 (1999).  Based on *Ortiz*, Plaintiffs argue that it is premature to decide whether they have standing to seek injunctive relief.  (Pl. Br. 13.)  Plaintiffs assert that "[i]n a class action context, where a standing issue would not arise but for class certification, those class certification issues are logically antecedent to Article III standing and should be decided in advance of any standing issues."  *Id.*

In *Ortiz*, "the Supreme Court observed that in cases where class certification issues are logically antecedent to Article III concerns and themselves pertain to statutory standing, then the issue of Rule 23 certification should be treated before standing.  This is an exception to the usual rule that standing is a threshold question that must be decided prior to class certification issues." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003) (internal quotations and citation omitted).  The *Ortiz* exception, however, "does *not* apply if the standing issue would exist

---

[3] To the extent Defendant's Article III standing argument was actually about statutory standing related to each Plaintiff's individual state law claims, because the Court dismisses many of Plaintiffs' claims for failure to satisfy Rule 9(b), the Court declines to address the remaining statutory standing arguments at this time.

regardless of whether the named plaintiff filed his claim alone or as part of a class." *Id.* (emphasis in original) (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 n.2 (5th Cir. 2002)).

Therefore, the Court agrees with Defendant that Plaintiffs lack standing to seek injunctive relief because no Plaintiff alleges that he or she is likely to "suffer future injury from the defendant's conduct . . . . [In] the class action context, that requirement must be satisfied by at least one named plaintiff." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). "The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects." *Id.* (internal citations and quotations marks omitted).

A recent case in this district found *McNaire* dispositive in consumer class action cases based on alleged misrepresentations. "As framed by *McNair*, the standing question is whether a putative class representative has alleged that he or she will be harmed, a second time, by the misrepresentation . . . . Moreover, it is not enough that other, non-named members of the class may intend to purchase a printer in the future; '[w]hen, as in this case, prospective relief is sought, the plaintiff must show that he is likely to suffer future injury from the defendant's conduct [and in] the class action context, that requirement must be satisfied by at least one named plaintiff.'" *Dicuio v. Brother Int'l Corp.*, 2012 U.S. Dist. LEXIS 112047, at *45-52 (D.N.J. 2012) (quoting *McNair*, 672 F.3d at 223). In the instant matter, not one named Plaintiff has alleged a likelihood of future injury. Further, Plaintiffs neither explain why any prospective class member would likely be harmed in the future by Defendant's conduct nor respond to the Court's prior holding on this issue with respect to Defendants' first motion to dismiss, except by

11

stating that they "respectfully disagree," the Court dismisses with prejudice Plaintiffs' claim for injunctive relief.

**B. Rule 9(b)**

Defendants also argue that the California, New Jersey, and Washington Plaintiffs fail to plead their fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b). Plaintiffs do not dispute that Rule 9(b) applies to the fraud claims asserted by the California, New Jersey, and Washington Plaintiffs; rather, they argue that the claims alleged by these Plaintiffs are sufficiently particular in that they identify each product at issue, identify the allegedly false and misleading statements made on the products' labels and in Gerber's advertising, mention which products each Plaintiff purchased, state that each Plaintiff viewed and relied on Gerber's allegedly false and misleading statements, and include representative samples of the allegedly misleading materials. (Pl. Br. 15-16.)  Plaintiffs argue that Rule 9(b) does not require them to allege, as Defendants contend, the particular statements upon which Plaintiffs relied or the exact date on which and location where they purchased the products and viewed the statements.

The Court agrees with Plaintiffs' contentions that the allegations of Plaintiffs Dourdoulakis, Hawkins, and Jose regarding the alleged misrepresentations about the immunity benefits of probiotics comport with the heightened requirements of Rule 9(b).  Generally, Rule 9(b) requires a plaintiff to "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged," and exists to "safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  "To satisfy [Rule 9(b)], the plaintiff must plead or allege the date, time and

place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. N.J. 2007) (citations omitted). "Rule 9(b) does not require 'every material detail of the fraud such as date, location, and time,' but the Third Circuit construes Rule 9(b) as requiring plaintiffs to use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Huertas v. Ameritrade, Inc.*, 2007 U.S. Dist. LEXIS 46428, 7-8 (D.N.J. June 26, 2007) (quoting *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)); *see also Farley v. Gamestop Corp.*, 2013 U.S. Dist. LEXIS 111581, at *6-7 (D.N.J. Aug. 7, 2013). In class action cases, each "individually named plaintiff must satisfy Rule 9(b) independently." *Pacholec v. Home Depot USA, Inc.*, 2006 U.S. Dist. LEXIS 68976, *4-5 (D.N.J. Sept. 25, 2006).

The Complaint in the instant matter regarding the fraud allegations of Plaintiffs Dourdoulakis, Hawkins, and Jose sets forth the dates within which Gerber ran the advertising campaign at issue, identifies the specific statements concerning the immune benefits of probiotics at issue in the campaign, attaches representative examples of the advertisements and labels, and states the date range within which and location where these Plaintiffs purchased the products. The Court finds that the facts alleged by Plaintiffs Dourdoulakis, Hawkins, and Jose inject sufficient precision to notify Defendants of the alleged misconduct forming the basis of Plaintiffs' Complaint.

However, the fraud allegations of Plaintiffs Burns, Thomas, and Alvarez fail to satisfy Rule 9(b). Plaintiff Alvarez does not allege any date on which or date range within which she viewed Gerber's advertisements or bought the products at issue, or the location at which she purchased the products. (TAC ¶ 23.) Plaintiff Burns also fails to allege any date on which or date range within which he viewed Gerber's advertisements or bought the products at issue.

(TAC ¶ 24.)   Further, Plaintiff Burns claims that he viewed and relied upon Gerber's "advertisements," but does not state which medium these advertisements were in or any other facts to inject precision into his fraud allegation.   (TAC ¶ 24.)   Plaintiff Thomas states that she relied on Gerber's "in-store" advertisements, but nowhere in the Complaint can allegations related to the substance of in-store advertisements be found.   (TAC ¶ 30; Def. Br. 27.)   These allegations are insufficient to satisfy Rule 9(b), and they are dismissed without prejudice.   *See, e.g., Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010); *Cook v. Exelon Corp.*, 2002 U.S. Dist. LEXIS 18125, at *15 (N.D. Ill. Sept. 25, 2002).

The Court also agrees with Defendants that Plaintiffs have failed to allege sufficient particularity with respect to their breastmilk equivalence claims.   Gerber argues that their products do not claim to be near equivalents to breastmilk but rather expressly advocate breastmilk as the best option for babies.   (*See, e.g.,* Def. Br. 19.)   Plaintiffs' Complaint demonstrates how the overall impression of Gerber's claims regarding breastmilk could be to mislead the reasonable consumer, but in light of the clear language on Gerber's products that "Gerber recommends breastmilk as the best start for babies" (TAC ¶ 56), the Complaint does not sufficiently tie each named Plaintiff's claim to Gerber's alleged misrepresentations regarding breastmilk equivalency.   Specifically, each Plaintiff only pleads in conclusory fashion that he or she relied on Gerber's misleading statements that the products were near equivalents to breastmilk.   (TAC ¶¶ 23-27, 30.)

Because the purpose of Rule 9(b) is to put defendants on notice and guard against frivolous claims, the Court finds that Plaintiffs must do more with respect to their breastmilk equivalence claims.   At the very least, each named plaintiff must allege that he or she was

14

misled, i.e. that he or she believed the products at issue to be near equivalents to breastmilk based on Geber's alleged misrepresentations concerning breastmilk equivalence. *See, e.g., Hemy v. Perdue Farms, Inc.*, 2011 U.S. Dist. LEXIS 137923, at \*47-48 (D.N.J. Nov. 30, 2011) (finding plaintiffs' misrepresentation allegations too conclusory because plaintiffs failed to allege that they interpreted "Humanely Raised" to include "slaughtering"); *Crozier*, 901 F. Supp. 2d at 506, 508 (D.N.J. 2012) (dismissing plaintiffs' Complaint because, among other things, plaintiffs failed to allege whether they were in fact misled and believed that the spray contained antibiotics). "Plaintiffs' failure to plead that they were misled is fatal, particularly given the specificity that Rule 9(b) requires for NJCFA claims." *Crozier*, 901 F. Supp. 2d at 506. As a result, the Court finds that Plaintiffs have failed to plead their breastmilk equivalence claims with the particularity required by Rule 9(b). Plaintiffs' breastmilk equivalence claims are dismissed without prejudice.

### C. Plaintiff Siddiqi's NYCPA Claim

The parties agree that Plaintiff Siddiqi's New York Consumer Protection Act ("NYCPA") claim is not subject to the heightened pleading requirements of Rule 9(b). Plaintiff Siddiqi does not allege a breastmilk equivalence claim. Defendant argues that Plaintiff Siddiqi's claim should be dismissed because she fails to plead causation as required by the NYCPA. Plaintiffs argue that Plaintiff Siddiqi alleges causation; Plaintiff Siddiqi claims that she "viewed the television advertising and read the label misrepresentations," and that she "would not have purchased and paid a premium for Gerber DHA & Probiotic Single Grain Cereal but for Gerber's misrepresentations." (Pl. Br. 35.; TAC ¶ 29.) Moreover, Plaintiffs describe the content of the television commercials and product labels throughout their Complaint. (*See, e.g.*, TAC ¶¶ 2, 58, 64.)

This Court agrees with Plaintiffs that Ms. Siddiqi sufficiently pleads causation under the NYCPA. She alleges that she saw and relied on the alleged misrepresentations in television commercials and on the product labels, and that she paid a premium for the product based on these alleged misrepresentations. These allegations are sufficient to make out a plausible claim under the NYCPA. *See Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at *10 n.5 (E.D.N.Y. July 17, 2013) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.") (citing *Jernow v. Wendy's Int'l, Inc.*, 2007 U.S. Dist. LEXIS 85104, at *8 (S.D.N.Y. Nov. 15, 2007)). Defendant's motion to dismiss Plaintiff Siddiqi's claim is denied.[4]

## D. Breach of Express and Implied Warranty and Unjust Enrichment Claims

### 1. Choice of Law

Plaintiffs bring New Jersey state law claims for breach of express and implied warrant and unjust enrichment on behalf of all Plaintiffs and the putative class, or in the alternative on behalf of a class of similarly situated persons from each Plaintiff's respective state of residence pursuant to the applicable provision of law from his or her state. Plaintiffs argue that a fuller factual record is necessary to make any choice-of-law determinations, and, thus, a choice-of-law analysis would be premature at this stage of the proceedings. Gerber does not address Plaintiffs' argument that a choice-of-law determination would be premature; rather, Gerber argues that the law of Plaintiffs' home states should apply to Plaintiffs' breach of warranty claims. Because

---

[4] Since the Court dismissed without prejudice Plaintiffs' breastmilk equivalence claims, as well as the probiotic benefits fraud claims of Plaintiffs Burns, Thomas, and Alvarez, for failing to satisfy Rule 9(b), and Plaintiffs' probiotic benefits and breastmilk equivalence claims are interrelated in each of their allegations, in the interest of judicial economy, the Court declines to decide whether the remainder of Plaintiffs' state law fraud claims are subject to dismissal at this time.

Plaintiffs maintain that a choice-of-law determination is premature at this stage of the proceedings, Plaintiffs allege that New Jersey law should apply to the motion to dismiss.

"The decision about whether a choice-of-law issue is ripe or premature should be made on a case-by-case basis depending on the facts presented. . . . [C]ourts, including the Third Circuit, have decided choice-of-law issues on a motion to dismiss when the necessary facts are pled in the complaint." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012). "Other times, however, Courts in this District have deferred the choice of law analysis until the class certification stage." *See Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011); *see also Harper*, 595 F. Supp. 2d at 490-91; *In re Samsung*, 2009 U.S. Dist. LEXIS 100065, 2009 WL 3584352, at *3; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Hypodermic Products Antitrust Litig.*, Civ. No. 05-1602, 2007 U.S. Dist. LEXIS 47438, at *16 (D.N.J. June 29, 2007). In order to decide whether choice of law analysis is appropriate here, the Court will determine whether the choice of law issues "require a full factual record" or not. *Harper*, 595 F. Supp. 2d at 491.

In the Third Circuit, a court "must apply an individualized choice of law analysis to each of plaintiff's claims." *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (citing *Phillips*, 472 U.S. at 823). A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). New Jersey's choice of law analysis is a two-step process. First, a court must determine if an actual conflict of law exists. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453, 460 (N.J. 2008); *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006). Once it has been determined that a conflict exists,

the court must then determine which state has the "most significant relationship" to the claim at issue, as analyzed under the Restatement (Second) of Conflict of Laws. *Camp Jaycee*, 962 A.2d at 455. This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* at 460. The Court will proceed to address New Jersey's choice of law analysis for each issue, and should the choice of law determination for that issue require a fuller factual record, the Court will defer its decision until such factual record is available.

### 2. Breach of Express Warranty

Applying the first step of New Jersey's "most significant relationship" test, Defendant and Plaintiffs agree that there is no conflict as to the breach of express warranty laws in New Jersey, New York, California, and Washington.[5]   Therefore, a choice of law analysis is not required.

To establish a breach of express warranty claim under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203. "Express warranties in New Jersey are governed by Article 2 of the state's Uniform Commercial Code." *Henderson v. Volvo Cars of North America, LLC*, 2010 U.S. Dist. LEXIS 73624 (D.N.J. Jul. 21, 2010) (citing N.J.S.A. 12A:2-101 *et seq*). Section 2-313 provides, in pertinent part:

(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

---

[5] Defendant's argument that Plaintiffs failed to allege privity as required by the express warranty law of Illinois is moot.  Plaintiff Rudich, the only named Illinois Plaintiff, voluntarily dismissed his claims on March 13, 2013.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Gerber argues that Plaintiffs have failed to make out a breach of express warranty because they do not "identify the express promise or representation that they allege was breached. . . " and they fail to allege that "their children did not receive the claimed health benefits." (Def. Br. 36-37.)   Plaintiffs contend in opposition that their Complaint alleges numerous specific "promises and descriptions about the Products on the packaging and labels[,] includ[ing]: (1) the Products contain 'IMMUNIPROTECT,' which is 'beneficial cultures that provide advanced immune system support;' (2) Gerber DHA & Probiotic cereal contains 'Bifidus BL to help support a healthy immune system;' [and] (3) Good Start Protect and Good Start 2 Protect Formula provide 'Advanced Immune Support' and contain 'IMMUNIPROTECT PROBIOTIC' and Bifidus BL for ADVANCED IMMUNE SYSTEM SUPPORT.'"   Further, Plaintiffs contend that Gerber breached these express warranties because the alleged falsities and misrepresentations "constituted an inducement to the Plaintiffs to purchase and use the products," and the Complaint alleges scientific evidence that proves that the products did "not provide the specific health benefits claimed." (Pl. Br. 40.)

In support of its argument, Gerber cites several cases in which courts dismissed breach of express warranty claims for failure to include the statements that constituted alleged warranties anywhere in the complaint. *See, e.g., Parker v. Howmedica Osteonics Corp.*, 2008 U.S. Dist. LEXIS 2570, at *21 (D.N.J. Jan. 14, 2008).  Here, by contrast, Plaintiffs' Complaint is replete with statements Gerber made on its labels and throughout its advertising campaign. (*See, e.g.,* TAC ¶¶ 5, 15, 56, 58.)  Further, Plaintiffs' claim for breach of express warranty alleges that "[t]he terms of th[e] contract include[d] the promises and affirmations of fact relating to the

19

Products' purported immunity-related health benefits and near-equivalence to breastmilk made by Defendant on its product labels and repeated throughout its marketing campaign. . . ." (TAC ¶ 192.) Plaintiffs' breach of express warranty claim incorporates by reference the statements and advertisements identified in the Complaint. (TAC ¶ 188.) Moreover, the Complaint alleges that the express warranties induced Plaintiffs to purchase the products, and that the express warranties were false or misleading. (*See, e.g.,* TAC ¶¶ 7, 23-30, 33, 192.) The Complaint also sets forth that Plaintiffs paid a premium for the products that they would not have paid absent their belief in the affirmations on the product labels and in advertisements. (*See, e.g.* TAC ¶¶ 23-30.) These allegations are sufficient to establish a plausible breach of express warranty under New Jersey law. *See, e.g., Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 100 (D.N.J. 2011) (finding a "fraudulently induced purchase" to constitute an injury); *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 469-470 (D.N.J. 2007) (finding breach of express warranty properly plead where plaintiffs alleged that untrue assertions in product bulletin induced them to use the product).

### 3. Breach of Implied Warranty of Merchantability

Applying the first step of New Jersey's "most significant relationship" test, Defendant and Plaintiffs agree that breach of implied warranty laws in New York, Washington, and California require a plaintiff to prove privity while the law in New Jersey does not. Therefore, there is an actual conflict with regard to the breach of implied warranty laws of the various states at issue.

Under the second step, since breach of implied warranty claims sound in contract, courts look to Section 188 of the Restatement to determine which state's law applies. The Restatement requires courts to consider: "(1) the place of contracting, (2) the place of negotiation of the

contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 6; *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009). Additionally, courts look to the more general factors set forth in Section 6 of the Restatement: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states. Restatement (Second) of Conflict of Laws § 6; *Camp Jaycee*, 197 N.J. 132.

"Applying the factors necessary to determine choice of law for a contract or quasi-contract claim is a very fact-intensive inquiry. Courts in this District have found in some cases that a choice of law inquiry as to contract-based claims is premature at the motion to dismiss stage." *Snyder*, 792 F. Supp. 2d at 718 (citing *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 517; *Harper*, 595 F. Supp. 2d at 491 (D.N.J. 2009)). In line with these cases, the Court finds that the factual record here is not yet full enough to make a choice of law determination as to Plaintiffs' breach of implied warranty claim because, for example, it is not yet clear where each named Plaintiff purchased the products at issue. *See Cooper v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 75810, at*14 (D.N.J. 2008) (collecting cases); (TAC ¶¶ 23, 24, 29). Therefore, the Court will apply New Jersey law for the purpose of deciding the motion to dismiss. *See Snyder*, 792 F. Supp. 2d at 721.

Plaintiffs allege that Defendant has violated the implied warranty of merchantability, pursuant to N.J. Stat. Ann. § 12A:2-314, which provides that merchantable goods must:

(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J. Stat. Ann. § 12A:2-314.  The implied warranty of merchantability "protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

In New Jersey, "[m]erchantability requires that a product conform to its ordinary and intended use." *Hughes v. Panasonic*, 2011 U.S. Dist. LEXIS 79504, at * 22 (D.N.J. July 21, 2011) (internal quotation omitted).  "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 82833, at * 16 (D.N.J. Sept. 11, 2009).  "The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Hughes*, 2011 U.S. Dist. LEXIS 79504, at * 22 (internal quotations omitted).  The warranty of merchantability "'simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.'" *Ferrari v. Am. Honda Motor Co., Inc.*, 2009 N.J. Super. Unpub. LEXIS 346, at *3 (N.J.App. Jan. 30, 2009) (quoting *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 370 (1960)).

Plaintiffs have not alleged that the products at issue were defective or unfit for consumption; rather, Plaintiffs contend that false and misleading advertisements induced them to purchase the products and that the products "did not conform to the promises and affirmations made on the container or label of goods." (TAC ¶ 205.)  Plaintiffs have cited no authority that convinces this court that a breach of the warranty of merchantability can be established without a

22

showing that the products at issue were not fit for their general purpose. In the instant matter, Plaintiffs do not dispute that the general purpose of the products was to function as infant food. Plaintiffs do not claim that the products were not fit for that purpose, and courts in this district have held that in order to allege a breach of the implied warranty of merchantability, a plaintiff is "require[d to make] a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." *See Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 508-509 (D.N.J. 2012); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 542-544 (D.N.J. 2011).

Even accepting Plaintiffs' allegations as true, the Court finds nothing in the Third Amended Complaint to allege that the products were not fit for their ordinary purpose of providing infant nutrition. Plaintiffs' breach of implied warranty claims are dismissed with prejudice. *Compare Lieberson*, 865 F. Supp. 2d at 543 (finding no breach of the implied warranty of merchantability where soap and lotion did not help babies sleep, as advertised, because the soap was "clearly manufactured for the purpose of washing and moisturizing babies' skin"), *with Nelson v. Xacta 3000, Inc.*, 2010 U.S. Dist. LEXIS 47128, 2010 WL 1931251, at * 8-9 (D.N.J. May 12, 2010) (denying defendants' motion to dismiss a breach of implied warranty claim because the ordinary purpose of the foot pads was to "remov[e] toxins and impurities from the body," and the footpads did not perform this function).

4. Unjust enrichment

Since there is no dispute that "'there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn,' New Jersey law. . . applies to [Plaintiffs' unjust enrichment] claim[]." (TAC ¶ 212; Def. Br. 40-41.) Defendant moves to dismiss Plaintiffs' unjust enrichment claim on the basis that it is in

23

substance a tort claim and New Jersey does not recognize unjust enrichment as an independent tort cause of action.

To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).

The Court has carefully reviewed Plaintiffs' unjust enrichment allegations. The crux of the claim is that "Defendant has been unjustly enriched. . . because Defendant misrepresented that the Products enhance brain and eye development, improve digestive function, and boost and strengthen the immune system of babies and toddlers when in fact they do not. . . ." (TAC ¶ 214.) The Court finds that Plaintiffs have failed to state a facially plausible claim of unjust enrichment because the conduct underlying Plaintiffs' unjust enrichment claim sounds in tort. New Jersey does not recognize unjust enrichment as an independent tort cause of action. *See Castro v. NYT Television,* 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).").

Plaintiffs have not alleged that they did not receive the products they purchased or otherwise conferred a benefit on the Defendant under a quasi-contractual relationship with the expectation of remuneration. Rather, they assert that Defendant misrepresented the health

24

benefits of the products Plaintiffs purchased. (*See, e.g.,* TAC ¶ 214.) Defendants' motion to dismiss this claim is therefore granted. *See, e.g., Pappalardo v. Combat Sports, Inc.,* 2011 U.S. Dist. LEXIS 147902, at *31-35 (D.N.J. 2011) (granting motion to dismiss unjust enrichment claim because "[i]t was presented as a tort-based theory of recovery, in that Plaintiffs d[id] not allege that they did not receive the composite barreled bats they purchased, but rather that the Manufacturer Defendants and League Defendants misrepresented that the composite barreled bats. . . were suitable for use in organized youth baseball"); *Nelson v. Xacta 3000 Inc.,* No. 08–5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim after finding that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action"); *Warma Witter Kreisler, Inc. v. Samsung Elecs., Am., Inc.,* No. 08–5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim and noting that "Plaintiff does not claim that it failed to receive the printer for which it conferred a benefit on the Defendant; rather, Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages. Such allegations sound in tort."). Because the Complaint contains no facts to support a plausible unjust enrichment claim sounding in contract or quasi-contract, Plaintiffs' unjust enrichment claim is dismissed with prejudice.

### E. Substantiation Allegations

Last, Defendants argue that "[d]espite the Court's dismissal with prejudice of plaintiffs' claims based on a lack of substantiation theory of liability. . . , the TAC is replete with allegations concerning the lack of scientific support for the advertised health benefits of Gerber's products." (Def. Br. 42.) Plaintiffs argue in opposition that in its prior opinion the Court recognized that the claims in the TAC are not based on a lack of substantiation theory, but rather

25

demonstrate that "Gerber's representations regarding the immune system benefits are false and misleading." (Pl. Br. 49.) In its prior opinion, however, while this Court "decline[d] to hold that Gerber's representations are neither false, deceptive, nor misleading," it did find that "Plaintiffs claims are not viable to the extent that they are based on a lack of substantiation theory." [CM/ECF No. 61, at 15, 16.]. To the extent that is now the law of the case, the Court advises Plaintiffs to remove any allegations contained in the TAC that Gerber's representations are unsubstantiated. *See, e.g.*, TAC ¶¶ 53, 54, 92.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is granted in part and denied in part. The Court grants Defendant's motion to dismiss regarding Plaintiffs' claims for injunctive relief. The Court also grants Defendant's motion insofar as it moved to dismiss the fraud allegations of Plaintiffs Burns, Thomas, and Alvarez for failing to satisfy Rule 9(b). In addition, the Court grants Defendant's motion with regard to all Plaintiffs' breastmilk equivalence claims for failing to satisfy Rule 9(b). The Court also grants Defendant's motion insofar as it moved to dismiss Plaintiffs' breach of implied warranty and unjust enrichment claims. The Court denies, however, Defendant's motion insofar as it moved to dismiss all of Plaintiffs' claims for lack of Article III standing, Plaintiff Siddiqi's NYCPA claim, and Plaintiffs' breach of express warranty claim. Plaintiffs' fraud claims are dismissed *without* prejudice. Plaintiffs' injunctive relief, breach of implied warranty, and unjust enrichment claims are dismissed *with* prejudice.

An appropriate Order accompanies this Opinion.

DATE: March 3/, 2014

Jose L. Linares
United States District Judge

26