**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| IN RE GERBER PROBIOTIC SALES PRACTICES LITIGATION | Civil Action No.: 12-835 (JLL) **OPINION** |
|---|---|

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss (CM/ECF No. 93) the Fourth Consolidated Amended Complaint ("FAC") (CM/ECF No. 92) pursuant to Federal Rule of Civil Procedure 12(b)(6) by Gerber Products Company (hereafter "Defendant" or "Gerber"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motion, Defendant's motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

The instant putative consumer-protection class action arises out of the alleged deceptive, false, and misleading marketing of three Gerber products (collectively the "Products"): Good Start Protect Infant Formula and Good Start 2 Protect Formula for 9 through 24 months ("Good Start"), and DHA & Probiotic Cereal – Single Grain Oatmeal and Rice varieties. (FAC ¶ 2). Plaintiffs[1] allege that the marketing and labeling of those products are deceptive in two primary ways: despite

---

[1] The following plaintiffs assert claims in the FAC Irene Dourdoulakis, Shavonda Hawkins, and Saba Siddiqi. (FAC ¶¶ 24-26) (collectively "Plaintiffs").

representations to the contrary, the Products (1) do not provide immune system benefits; and (2) are not near equal to breast milk.

First, Plaintiffs assert that the Products' marketing and labeling contain false and misleading misrepresentations based on the immune system effect of a probiotic bacteria, "Bifidus BL." (FAC ¶ 4). Plaintiffs allege that despite Defendant's representations regarding the Products' immune system benefits, "numerous studies show that the Products do not and cannot provide the immune-related health benefits Defendant claims." (FAC ¶ 4). Specifically, Plaintiffs allege:

> Gerber's representations are designed to induce consumers, unaware that healthy babies' bodies already maintain the proper balance of intestinal bacteria, to buy the Products. Gerber advertises the Products as the only formulas and cereals that include probiotics that will strengthen and support the immune systems of young children. However, Defendant's marketing message is false and deceptive, as the "probiotic" bacteria in the Products do not perform as advertised, and scientific studies . . . demonstrate that probiotic supplementation in infant formula does not support infant immunity or provide the advertised health benefits including because . . . such supplementation does not (a) decrease the levels of harmful pathogens in babies' intestinal microflora, (b) increase the levels of good bacteria in babies' intestinal micro-flora, or (c) reduce infections.

(FAC ¶ 8, see also ¶¶ 16, 17).

With regard to the Good Start products, Plaintiffs maintain that the Gerber marketing strategy deliberately includes "IMMUNIPROTECT™," which contains the trademarked Bifidus BL probiotic bacteria, as a "deceptive marketing hook." (FAC ¶ 6). With regard to its cereal products, which also contain Bifidus BL, Plaintiffs allege that Gerber represents they will "help support a healthy immune system." *Id.* Plaintiffs also allege that Gerber, to further reinforce the allegedly deceptive message, represents that the Products' "advanced" immune system benefits result from the use of Bifidus BL, which is found in breast milk. (FAC ¶ 7). Plaintiffs assert that "Gerber's representations are designed to induce customers, unaware that healthy babies' bodies already maintain the proper balance of intestinal bacteria, to buy the products." (FAC ¶ 8).

Second, Plaintiffs allege that despite the fact that "experts unanimously agree that breast milk is best for infants," Gerber also adds ingredients to the Products in order to "claim on its packaging and labeling, and throughout its marketing and advertising campaign that the Products possess nutritional qualities that are nearly equivalent to those of breast milk." (FAC ¶ 12, *see also* ¶¶ 13, 14). However, scientific evidence allegedly demonstrates that "breast milk provides unique nutritional benefits that Defendant's Products do not provide." (FAC ¶ 15).

Plaintiffs allege that even though the Products' marketing implies that there is a proven scientific basis for the immune system benefits, by representing that the health-related claims are based on "studies" and "research," "the body of scientific evidence on probiotic supplementation in infant formula shows that the probiotic ingredient in the Products *does not* support the infant immune system and *does not* otherwise provide the advertised health benefits." (FAC ¶ 19, *see e.g.* ¶ 36, 38) (emphasis in original). Similarly, "scientific evidence proves that, contrary to Defendant's advertising, formula supplemented with probiotics does not provide breast milk-quality nutrition." (FAC ¶ 20).

In support of the allegation that the findings of numerous studies contradict Defendant's representations regarding the Products, Plaintiffs point to a number of scientific studies and reports. (FAC ¶¶ 70-82). In addition, Plaintiffs allege that Defendant cites no studies that effectively support certain of its claims. In fact, Plaintiffs claim that the studies cited by Defendant actually demonstrates the falsity of Defendant's advertising and otherwise do not support its immunity strengthening claims. (FAC ¶¶ 83-87). Therefore, Plaintiffs allege that "[n]one of these studies, even if they could be characterized as clinical – which they cannot – supports the conclusion that Gerber Products in fact strengthen and support a baby and toddler's immune system as labeled and advertised." (FAC ¶ 88).

Accordingly, Plaintiffs allege that the "labeling and advertising claims are false and deceptive because they imply that the Products provide more health benefits that other, less costly predecessor and regular formulas that do not contain probiotics, Bifidus BL™, or "IMMUNIPROTECT™." (FAC ¶ 61). Therefore, Plaintiffs allege that Defendant's representations regarding the Products are likely to mislead consumers acting reasonably under the circumstances into believing that the Products are superior to other products because they are the near-equivalent of breast milk and that they provide immune system benefits. (FAC ¶ 62). Further, they allege that a reasonable consumer would not have purchased the Products but for the alleged misrepresentations and that Plaintiffs have paid a premium for doing so. (FAC ¶ 100). Gerber allegedly sells the Products at a premium over predecessor and regular formula products without probiotics. (FAC ¶ 22).

Plaintiffs assert that despite rebranding the Products in February 2010 and re-naming them in early 2011, Defendant has manufactured, marketed, and sold the Products since at least September 27, 2009 with false and misleading representations on the packaging, labeling, and online advertising. (FAC ¶ 3). Defendant allegedly advertises and promotes the Products primarily through "the front-of-pack and back-of-pack" labeling claims. (FAC ¶ 42). In addition, Defendant allegedly uses online advertising, including at its website, and other media, including television commercials. (FAC ¶¶ 43, 59, 60).

Plaintiffs assert the following causes of action in the FAC: (1) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* ("NJCFA") on behalf of Plaintiff Dourdoulakis and the putative Class or New Jersey Subclass; (2) violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, on behalf of Plaintiffs Hawkins and the putative California Subclass; (3) unlawful business acts and practices in violation of California

Business & Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs Hawkins and the putative California Subclass; (4) violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiff Siddiqi and the putative New York Subclass; (5) violation of the Washington Deceptive Trade Practices Law, Wash. Rev. Code. §§ 19.86.020, *et seq.* on behalf of Plaintiffs the putative Washington Subclass. In addition, the FAC also contains a number of New Jersey state law claims on behalf of all Plaintiffs and the putative class, or in the alternative on behalf of a class of similarly situated persons from each Plaintiff's respective state of residence pursuant to the applicable provision of law from his or her state: (1) breach of implied warranty of merchantability (Count VI); and (3) unjust enrichment (Count VII).

## II. JURISDICTION and LEGAL STANDARD

Jurisdiction is premised upon 28 U.S.C. § 1332(d)(2), as Plaintiffs allege that the matter in controversy, exclusive of interest and cost, exceeds the value of $5 million and is a class action in which at least one class member is a citizen of a different state from Defendant.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips*

*v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 557 (2007)). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008)).

## III. DISCUSSION

### A. Motions Before the Court

#### 1. Defendant's argument

Defendant argues that dismissal is warranted on two grounds: (1) Plaintiffs lack Article III standing to assert claims for Gerber's infant formula products because no remaining named plaintiff is alleged to have purchased the specific product; and (2) The New Jersey Plaintiff fails to allege an "ascertainable loss".

#### 2. Plaintiff's Opposition

In opposition to the instant motion, Plaintiff argues: (1) Plaintiffs have standing to assert claims relating to products they did not purchase; and (2) Plaintiffs have plead an ascertainable loss under the New Jersey Consumer Fraud Act.

### B. Standing

The requirements of Article III constitutional standing are as follows:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992); *Darners Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005); *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175–76 (3d Cir. 2000).

"In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut Funds Litig.*, F.Supp.2d at 461. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Hayes v. Wal–Mart Stores, Inc.*, No. 12-2522, 2013 WL 3957757, at *9 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494, (1974)). At the pleading stage, "[a]lthough general factual allegations of injury resulting from the defendants conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Lujan*, 504 U.S. at 561; *Whitmore v. Arkansas*, 485 U.S. 149, 155 (1990)).

In *Haas v. Pittsburgh National Bank,* the Third Circuit held that notwithstanding the fact that a plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant. 526 F.2d 1083, 1088–89 (3d Cir. 1975). The Third Circuit explained in that case:

> Haas' two claims against Mellon Bank, moreover, are closely related to the commercial transactions claim on which she lacks standing. Not only do all three claims involve identical revolving accounts under the same Mellon Bank cardholder agreements, but the statutory damages sought to be recovered for each asserted violation are in large part the same.

*Id.*

Following that rationale, this Court, in *Stewart v. Smart Balance,* denied Defendant's motion to dismiss Plaintiffs' claims for products they did not personally purchase. No. 11-6174, 2012 WL 4168584, at 14. (D.N.J. June 26, 2012) Smart Balance asserted, *inter alia,* that the Stewarts lacked standing to pursue claims for two out of the three Fat Free Enhanced Milk products at issue, stating "the injury in fact requirement does not, as Plaintiffs urge, disappear in the class action context." *Id.* This Court found dismissal inappropriate at that particular stage of the litigation because the basis for the Plaintiffs' claims were the same, the products were closely related, and the defendants were the same. *Id.* at 16. These factors, coupled with the fact that the issue of standing was not before the Court, led to denial of Smart Balance's motion to dismiss. *Id.*

Defendant argues that Plaintiffs lack Article III standing to assert claims for Gerber's infant formula products because no remaining named plaintiff is alleged to have purchased the specific product. Specifically, Defendant state that in order to allege a concrete "injury in-fact," a plaintiff must have suffered an injury as a result of actually purchasing the product in question himself. However, because Plaintiffs removed Jose Joven as a plaintiff within the FAC, the Complaint now fails to include a named plaintiff who purchased the infant formula products personally. Defendant further argues that even if Plaintiffs are entitled to assert claims for products they did not personally purchase, the products are not sufficiently related for Plaintiffs' claims to meet the standard imposed by the Court.

Plaintiffs argue that contrary to Defendant's assertions, Plaintiffs do have Article III standing. Plaintiffs state that if a standing issue would arise solely because of class certification, then the class certification issue should be decided before the standing issues are addressed. Therefore, Plaintiffs contend, because Plaintiffs' class has yet to be certified, a dismissal based upon Plaintiffs lack of standing would be premature. What is more, Plaintiffs argue that if a class includes purchasers of a variety of products, a named plaintiff that purchases only one type of product may assert a claim for a product he did not purchase, as long as the misrepresentations and omissions were common to all purchasers. Further, Plaintiff contends that a class-action plaintiff may assert claims for a product he did not purchase so long as the basis for the claims is the same, the products are closely related, and the defendants are the same.

While Defendant is correct in asserting that Plaintiffs have failed to name a Plaintiff who has personally purchased Gerber's infant formula product, the Court declines to dismiss Defendant's motion on these grounds. Following the approach taken by *Haas* and *Stewart,* the Court finds that dismissal is inappropriate at this stage of the litigation.

First, Plaintiffs sufficiently allege that the basis for the claims is the same. Plaintiffs argue that Gerber falsely promoted *both* products as having the same probiotic bacteria, Bifidus BL, which, Defendant claims, promotes the development of Children's immune systems. (emphasis added). Plaintiff furthers their argument by noting that both the formula and cereal products are part of the same "Start Healthy, Stay Healthy" product line. Plaintiffs maintain that Gerber promotes this product line as one that is "backed by rigorous science and research," "scientifically advanced," and both products bear the "ImmuniProtect" trademark, allegedly designed to "help [consumers] recognize Gerber foods with important vitamins and minerals that support healthy growth as well as nutrients and ingredients that support a healthy immune

system." Second, the Court finds that the products are closely related. Not only are the products part of the same "Start Healthy, Stay Healthy" line, as Plaintiff notes, they both contain the same probiotic bacteria, Bifidus BL. Finally, the Defendants are the same due to both products being manufactured by Gerber. Therefore, by following the same approach this Court took in *Stewart*, which was based on the Third Circuit's ruling in *Haas*, the Court finds dismissal of Plaintiff's claim, based upon a failure to name a Plaintiff who personally bought one of the products at issue, inappropriate at this stage of the litigation.

### C. Ascertainable Loss

"To state a cause of action under the [New Jersey] Consumer Fraud Act, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendant's allegedly unlawful behavior and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 11-12 (App. Div. 2003) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)). Under the NJCFA, Plaintiffs are "required to plead specific facts setting forth and defining the ascertainable loss suffered." *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *9 (D.N.J. April 26, 2007). To establish ascertainable loss, a plaintiff "must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005) (evidence of ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation. . ."). In interpreting the NJCFA, courts have been instructed to "be faithful to the Act's broad remedial purposes . . . . [and] construe the [Act] broadly, not in a crabbed fashion." *Id.* at 556 (citations omitted).

In cases involving misrepresentation, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle." *Thiedemann*, 872 A.2d at 792. In addition, the New Jersey Supreme Court has found ascertainable loss premised on a benefit-of-the-bargain theory sufficient to establish a prima facie case. *Id.* at 795 n.8; *Smajlaj*, 782 F. Supp. 2d at 99. "A plaintiff alleging a benefit-of-the-bargain states a claim if he or she alleges (1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Id.* Importantly, "[t]he certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." *Thiedemann*, 872 A.2d at 792.

Defendant argues that because the sole remaining New Jersey Plaintiff, Dourdoulakis, ("NJ Plaintiff") has not alleged the purchase or use of Gerber infant formula products, as a matter of law she cannot establish ascertainable loss with respect to the formula. Defendant maintains that under the benefit of the bargain theory, NJ Plaintiff has not alleged that she either was promised or received allegedly inferior products. Therefore, Defendant argues, NJ Plaintiff cannot "quantify the difference in value between the promised products and the actual product received." *Smajlaj*, 782 F. Supp. 2d at 99. Further, Defendant contends that the remaining allegations NJ Plaintiff offers in support of ascertainable loss on cereal are inadequate as a matter of law. Specifically, Defendant argues that Plaintiffs have failed to identify a comparable product and its price to the product in question.

Plaintiffs state that by asserting that NJ Plaintiff failed to buy the Good Start Formula and therefore cannot allege ascertainable loss, Defendant is merely "re-run[ning]" its argument regarding NJ Plaintiff and the incapacity to sue for loss against products she did not buy. Further, Plaintiff states that they have validly alleged a benefit of the bargain theory in the FAC.

Specifically, Plaintiff argues that they have alleged that Gerber charges a premium for its probiotic products, based upon the benefits to the immune system that the products supposedly provide. Moreover, Plaintiff contends that they have also alleged that because the products do not actually offer these benefits, Plaintiffs have suffered a loss because they purchased a product and received less than what they paid for. Finally, Plaintiffs maintains that they do not need to specifically identify a comparable product by name. Rather, Plaintiffs claims that they need only to generally identify the type of products used for comparison and the results of that comparison.

While Plaintiff has sufficiently alleged that a reasonable belief about the product was induced by a misrepresentation, Plaintiff has failed to identify a comparable product and its cost, which would allow the Court to find the difference in value between the product as promised and the product as allegedly received. In *Lieberson v. Johnson and Johnson,* this Court dismissed the plaintiffs' claims without prejudice, for failure to allege the identity and cost of comparable products. 865 F. Supp. 2d at 541. The court stated:

> "[A]lthough Plaintiff alleges that comparable products cost twenty five percent less than the J & J products, Plaintiff has not alleged the identity or the cost of any allegedly comparable products. Thus, the Court is unable "to quantify the difference in value between the promised product and the actual product received." *Smajlaj,* 782 F.Supp.2d at 99. As a result, the Court finds that absent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss. For these reasons, Plaintiff's claims under the NJCFA are dismissed without prejudice because it is conceivable that Plaintiff could plead ascertainable loss with sufficient specificity.

*Id.*

Following the Court's reasoning in *Lieberson,* this Court finds that because Plaintiffs have failed to allege the identity and cost of comparable products to the products at issue, the Complaint must be dismissed *without* prejudice. Plaintiffs allege that Gerber charged more for the products at issue than for its ordinary formula and infant cereal products, and competitor

formula and infant cereal products (including both branded and private label products); that there is a difference of 10 cents per ounce for branded formulas and 45 cents per ounce for private label formulas; and Gerber is able to charge approximately $0.05 more per ounce for its DHA & Probiotic Cereal over its own oatmeal & banana, rice & banana apple, and oatmeal & apple peach infant cereals.

While Plaintiffs have named some of the comparable products (ie. Gerber's own infant cereals and formulas), they fail to name the identity of the alleged branded and private labeled products. Moreover, while Plaintiffs allege the difference in price between products, Plaintiffs fails to allege a price paid for the products, as well as the price for any comparable products. Plaintiff's allegations under the benefit of the bargain are sufficient, but for the lack of identity of some of the comparable products or the cost of any allegedly comparable product. In order for the Court to quantify the difference in value between the promised product and the actual product received, the Court must know the identity and price of the compared product beyond the conclusory tags of "private label formulas" and "competitor formula and infant cereal products." Because the Court finds that Plaintiffs could plead ascertainable loss with specificity, the Court will grant a *final* opportunity to amend this claim insofar as they can insert the identities and prices of comparable products sufficient to allege ascertainable loss under the benefit of the bargain theory. Therefore, Plaintiffs' Complaint is dismissed *without* prejudice.

## VI. CONCLUSION

For the reasons herein expressed, the New Jersey Plaintiffs' NJCFA claim is **dismissed without prejudice.** Plaintiffs may amend within 30 days. Defendant's motion to dismiss Plaintiffs claim for lack of Article III standing is **denied**.

An appropriate Order accompanies this Opinion.

DATE: October 6, 2014

                                                                                                         /s/Jose L. Linares  
                                                                                                         Jose L. Linares  
                                                                                                        United States District Judge